

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*
*Southern Division*

| | | | |
|---|---|---|---|
| *Matthew J. Maddox* | *Mailing Address:* | *Office Location:* | *DIRECT: 410-209-4940* |
| *Assistant United States Attorney* | *36 S. Charles Street, 4th Floor* | *36 S. Charles Street, 4th Floor* | *MAIN: 410-209-4800* |
| *Matthew.Maddox2@usdoj.gov* | *Baltimore, MD 21201* | *Baltimore, MD 21201* | *FAX: 410-962-0716* |

January 24, 2019

Christopher M. Davis, Esquire
Davis & Davis
1350 Connecticut Ave., NW
Suite 202
Washington, DC 20036

      Re:    United States v. Joshua Newman,
             Criminal No. ELH-16-0528

Dear Counsel:

This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Joshua Newman (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by **January 21, 2018**, it will be deemed withdrawn. The terms of the Agreement are as follows:

### Offense(s) of Conviction

1. The Defendant agrees to plead guilty to Counts Two and Six of the Second Superseding Indictment, which charge(s) the Defendant with Use of Interstate Facilities to Promote an Enterprise Involving Prostitution Offenses, in violation of 18 U.S.C. § 1952(a)(3),(b). The Defendant admits that the Defendant is, in fact, guilty of the offense(s) and will so advise the Court.

### Elements of the Offense(s)

2. The elements of the offense(s) to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows: That on or about the time alleged in the Second Superseding Indictment, in the District of Maryland, the Defendant

      a.    The Defendant used or caused someone else to use a facility of interstate or foreign commerce;

Rev. August 2018

       b.      The use of an interstate facility was done with the intent to promote, manage, establish, or carry on an unlawful activity (a business enterprise involving prostitution offenses);

       c.      After this use of an interstate facility, the Defendant performed or attempted to perform an act in furtherance of this same unlawful activity.

### Penalties

     3.      The maximum penalties provided by statute for the offense(s) to which the Defendant is pleading guilty are as follows:

| Count | Statute | Minimum Prison | Maximum Prison | Supervised Release | Maximum Fine | Special Assessment |
|-------|---------|----------------|----------------|--------------------|--------------| -------------------|
| Two | 18 U.S.C. § 1952(a)(3)(A) | N/A | 5 years | 3 years | $250,000 | $100 |
| Six | 18 U.S.C. § 1952(a)(3)(A) | N/A | 5 years | 3 years | $250,000 | $100 |

       a.      Prison:  If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

       b.      Supervised Release:  If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

       c.      Restitution:  The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

       d.      Payment:  If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d).  The Defendant may be required to pay interest if the fine is not paid when due.

       e.      Forfeiture:  The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

       f.      Collection of Debts:  If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt.  If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law.  Until the debt is paid, the Defendant

agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

## Waiver of Rights

4.     The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

a.     If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b.     If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c.     If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

d.     The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

e.     If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f.     By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant

may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

g.     If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

h.     By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

5.     The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

6.     This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein.

a.     This Office and the Defendant further agree that the two counts of conviction do not group, pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 3D1.2. Additionally, the Statement of Facts specifically establishes the commission of another offense, Distribution of Heroin in violation of 21 U.S.C. § 841(a)(1). For purposes of determining the advisory guidelines range, the additional offense shall be treated as if the Defendant had been convicted of an additional count charging this offense, resulting in a total of three Groups.

b.     **Groups 1 and 2 (Use of Interstate Facilities to Promote an Enterprise Involving Prostitution Offenses):** Pursuant to U.S.S.G. § 2E1.2(a)(2), the applicable base

offense level for each offense of conviction is the offense level applicable to the underlying unlawful activity. The underlying unlawful activity is promoting commercial sex acts or prohibited sexual conduct with an individual other than a minor. Pursuant to U.S.S.G. § 2G1.1(c), the applicable guideline is U.S.S.G. § 2A3.1 because the offense involved conduct described in 18 U.S.C. § 2242(1). Therefore, the base offense level is **30**, pursuant to U.S.S.G. § 2A3.1(a)(2). There is an increase of **2 levels**, pursuant to U.S.S.G. § 2A3.1(b)(4), because each victim sustained serious bodily injury. Thus, the adjusted offense level for each Group 1 and Group 2 is **32**.

        c.     **Group 3 (Distribution of Heroin):** The applicable base offense level for the additional offense is **12** pursuant to U.S.S.G. § 2D1.1(a)(5),(c)(14).

        d.     **Combined Offense Level:** Group 1 has the highest offense level (**32**) and scores one Unit, pursuant to U.S.S.G. § 3D1.4(a). Group 2 has an equally serious offense level and scores one Unit, pursuant to U.S.S.G. § 3D1.4(a). Group 3 has an offense level that is more than 8 levels less serious than the highest offense level, and scores no Units pursuant to U.S.S.G. § 3D1.4(c). Accordingly, **2 levels** are added to **32**, and the combined offense level is **34**.

        e.     This Office does not oppose a **2-level** reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a), based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional **1-level** decrease in recognition of the Defendant's timely notification of the Defendant's intention to enter a plea of guilty, if the defendant accepts this offer by the deadline described above. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

        f.     Thus, the anticipated final offense level is **31**.

    7.     There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

    8.     Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

## Rule 11(c)(1)(C) Plea

9.      The parties stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that a total sentence of **120 months of imprisonment** in the custody of the Bureau of Prisons is the appropriate disposition of this case taking into consideration the nature and circumstances of the offense, the Defendant's criminal history, and all of the other factors set forth in 18 U.S.C. § 3553(a).  Since the stipulated total sentence in this matter is higher than the five-year statutory maximum penalty for each count of conviction, the parties stipulate and agree that, pursuant to U.S.S.G. 5G1.2(d), the sentence imposed on the two counts of conviction shall run consecutively to produce a combined sentence equal to **120 months of imprisonment**.  This Agreement does not affect the Court's discretion to impose any lawful term of supervised release or fine or to set any lawful conditions of probation or supervised release.

10.     In the event that the Court rejects this Agreement, except under the circumstances noted below, either party may elect to declare the Agreement null and void.  Should the Defendant so elect, the Defendant will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5).  The parties agree that if the Court finds that the Defendant engaged in obstructive or unlawful behavior and/or failed to acknowledge personal responsibility as set forth herein, neither the Court nor the Government will be bound by the specific sentence contained in this Agreement, and the Defendant will not be able to withdraw his plea.

11.     The parties agree and understand that, if the Defendant enters a plea of guilty pursuant to this agreement and admits the violation of probation in Case No. CT070397X pending in the Circuit Court for Prince George's County, Maryland, the State's Attorney's Office for Prince George's County will recommend that any term of imprisonment imposed for the probation violation run concurrently with the sentence of imprisonment imposed in the instant federal case pursuant to Rule 11(c)(1)(C).

12.     At the time of sentencing, if the Court accepts the parties' agreement, this Office will move to dismiss any open counts against the Defendant.

## Waiver of Appeal

13.     In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

a.      The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever.  This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent that such challenges legally can be waived.

b.      The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of

imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows:

        i.       The Defendant reserves the right to appeal the sentence of imprisonment if the total term of imprisonment exceeds 120 months; and

        ii.      This Office reserves the right to appeal the sentence of imprisonment if the total term of imprisonment is less than 120 months.

        c.      The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

Restitution

14.      The Defendant agrees to the entry of a restitution order for the full amount of the victims' losses. The Defendant agrees that, pursuant to 18 U.S.C. §§ 3663 and 3663A and 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation. The total amount of restitution shall be due immediately and shall be ordered to be paid forthwith. Any payment schedule imposed by the Court establishes only a minimum obligation. Defendant will make a good faith effort to pay any restitution. Regardless of Defendant's compliance, any payment schedule does not limit the United States' ability to collect additional amounts from Defendant through all available collection remedies at any time. The Defendant further agrees that the Defendant will fully disclose to this Office, the probation officer, and to the Court, subject to the penalty of perjury, all information (including but not limited to copies of all relevant bank and financial records) regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this Agreement, and this Office may seek to be relieved of its obligations under this Agreement.

Forfeiture

15.      The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense(s), substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

16.      Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in the following items that the Defendant agrees constitute

money, property, and/or assets derived from, or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities:

Seized on or about August 20, 2015:

a.  Samsung B311V cellular telephone; and
b.  ZTE Grand X cellular telephone with red cover;

Seized on or about April 20, 2016:

c.  Samsung B311V cellular telephone;
d.  Samsung Galaxy Grand Prime cellular telephone;
e.  $302 United States currency;
f.  Glass smoking device;
g.  Plastic bag containing crushed pills; and
h.  Trojan condoms.

17.     The Defendant agrees to consent to the entry of orders of forfeiture for the property described herein and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding forfeiture during the change of plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

18.     The Defendant agrees to assist fully in the forfeiture of the above property.  The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

19.     The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint.  The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

Defendant's Conduct Prior to Sentencing and Breach

20.     Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

Rev. August 2018

21.     If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

## Entire Agreement

22.     This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Robert K. Hur
United States Attorney

Matthew J. Maddox
Assistant United States Attorney

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

1-29-2019
Date

Joshua Newman
Joshua Newman

Rev. August 2018

9

I am the Defendant's attorney.  I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant.  The Defendant advises me that the Defendant understands and accepts its terms.  To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

_1-29-19_
Date

_____
Christopher M. Davis, Esquire

Rev. August 2018

## **ATTACHMENT A**

### **STIPULATION OF FACTS**

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

The defendant, Joshua Newman ("NEWMAN"), age 31, is a resident of Catonsville, Maryland. During August 2015 and April 2016, NEWMAN distributed heroin and used cellular telephones and the Internet to promote a business enterprise involving illegal prostitution, as detailed below.

### **August 2015**

In or about August 2015, NEWMAN arranged commercial sex dates for adult female Victim 2 at different hotels and other locations in Maryland, and directed Victim 2 to engage in sex acts in return for money. NEWMAN posted prostitution ads for Victim 2 on Backpage.com, set prices for sex acts, and required Victim 2 to give him all proceeds from commercial sex acts. At times, he forbade Victim 2 from leaving the hotel room and communicating with others. NEWMAN provided heroin to Victim 2 and would withhold heroin from her if she did not make a certain amount of money through commercial sex. NEWMAN physically assaulted Victim 2 on multiple occasions.

### **April 2016**

In or about April 2016, NEWMAN brought adult female Victim 1 to a hotel room in Catonsville, Maryland. Victim 1 stole a quantity of heroin from NEWMAN and left the hotel room. NEWMAN looked for Victim 1 and eventually found her hiding under a bed inside her friend's residence in Glen Burnie, Maryland. NEWMAN used threats of force to get Victim 1 to leave with him.

Over the course of several days, NEWMAN took Victim 1 to different hotels in Maryland where he rented rooms, posted prostitution ads for her on Backpage.com, and directed Victim 1 to engage in sex acts in return for money. NEWMAN negotiated payment with sex clients and received all proceeds from commercial sex acts. He provided heroin to Victim 1 and withheld heroin at times. NEWMAN regularly forbade Victim 1 from leaving the hotel room, wearing clothes while inside the hotel room, and communicating with others by phone.

On April 19, 2016, Anne Arundel County Police Department ("AACPD") received information that Victim 1 was being held against her will and coerced to engage in prostitution in room #317 at a hotel in Linthicum, Maryland. AACPD detectives conducted surveillance on room #317 on April 19 and 20 and observed NEWMAN enter and exit the room multiple times. Specifically, detectives observed NEWMAN exit the hotel room just prior to different unknown males each entering the room on several occasions. At these times, NEWMAN would maintain a

short distance from the door to the room. The unknown male would stay inside room #317 for approximately 30 minutes and then leave. NEWMAN would then immediately enter the room.

Law enforcement identified a prostitution ad on Backpage.com believed to be associated with Victim 1. Working in an undercover capacity, an AACPD detective contacted the phone number listed in the ad by text message and requested a commercial sex date. Law enforcement observed NEWMAN outside room #317 using a cell phone to respond to the text messages. He provided the address of the hotel and the price of $150 for a 30-minute prostitution date. The undercover detective agreed to the price and negotiated with NEWMAN about the price for anal sex and unprotected sex. During the correspondence, NEWMAN asked whether the undercover detective was working with law enforcement, which the detective denied.

When the detective indicated that he had arrived, NEWMAN provided the number for a hotel room next to room #317. As the undercover detective approached the room number provided, Victim 1 greeted the detective and directed him to room #317. Once inside the room, the detective gave Victim 1 $150 and offered $60 for "anal," which she accepted. Law enforcement detained and identified Victim 1 and then arrested NEWMAN outside the hotel room.

SO STIPULATED:

Matthew J. Maddox
Assistant United States Attorney

Joshua Newman
Defendant

Christopher M. Davis, Esq.
Counsel for Defendant

2